Michael G. Black, Esq.
Bar No. (3508)
Black Law Office
7 West Sixth Avenue, Suite 514
Post Office Box 1311
Helena, Montana 59624-1311
blacklaw@blackfoot.net

Dmitry Lapin, Esq. (*pro hac vice* pending)
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570
Bar No. 329670 (PA)

**Attorneys for Plaintiffs Jon Q. Wright
and JQ Licensing, LLC**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

_____ X
                                       :
**JON Q. WRIGHT and JQ LICENSING, LLC** :
                                       :   Case No.: CV-24-100-GF-JTJ
                                       :
   **Plaintiffs,**                     :
                                       :
                                       :   **COMPLAINT FOR**
   v.                                  :   **COPYRIGHT**
                                       :   **INFRINGEMENT**
                                       :   **AND JURY DEMAND**
**SHELBY DISTRIBUTORS, LLC**           :
**d/b/a EAGLE BEVERAGE and ROBERT**    :
**CURTISS d/b/a CURTISS SERVICE CENTER** :
                                       :
   **Defendants.**                     :
_____ X

Complaint - 1

Plaintiffs Jon Q. Wright ("JQW") and JQ Licensing, LLC (collectively, the "Plaintiffs"), by and through their undersigned attorney, hereby pray to this honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from Defendants' willful copyright infringement of Plaintiffs' copyrighted and valuable illustration of a rainbow trout fish, titled "Action Series: Rainbow Trout," registered under U.S. Copyright Registration No. VAu-348-035 (hereinafter the "Subject Work"). Defendants' infringement have damaged Plaintiffs' business and threatens to damage it further. Plaintiffs seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, as well as Defendants' profits, or if elected, statutory damages, as well as attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

## THE PARTIES

2. Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and author of numerous fish illustrations, including the Subject Work, shown *infra*.

3. Wright is the author and owner of the Subject Work.

4. Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of

Montana as a foreign limited liability company (hereafter, "JQ Licensing"). Wright licenses his artwork exclusively through JQ Licensing.

5. Defendant Shelby Distributors, LLC d/b/a Eagle Beverage ("Eagle Beverage") is a limited liability company formed and existing under the laws of the State of Montana, with a principal place of business in Great Falls, Montana.

6. Defendant Robert Curtiss ("Curtiss") is an individual, who operates a convenience store in Simms, Montana, under the name Curtis Service Center.

## JURISDICTION AND VENUE

7. This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

8. This Court has subject matter jurisdiction over Plaintiffs' copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

9. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1440 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and the judicial district wherein the Defendants can be found.

## PLAINTIFFS' WORK OF ART

10. In 1995, JQW authored the Subject Work, which consists of a highly detailed depiction of a rainbow trout fish, and is reproduced directly below:



11. JQW duly registered the Subject Work with the U.S. Copyright Office under Registration No. VAu 348-036, as part of a collection of illustrations of different species of fish, all authored by JQW. This registration, entitled "Action Series," has an effective date of October 27, 1995.  A copy of the Action Series registration certificate is annexed hereto as **Exhibit A**.

12. JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process, involving a dizzying multiplicity of steps.

13. In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

14. Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position. He then impales the fish with numerous stakes to preserve the particular and desired pose, then captures a 360° perspective of the manipulated through a series of photographs.

15. Only then does JQW begin the sketching process, referring to the photographs to painstakingly depict the precise details of the fish with detail paintbrushes.

16. JQW then takes numerous artistic liberties with certain aspects of each fish. He expresses elements of each fish in a manner that is creative and unique to his style and artistic abilities.

17. With the Subject Work, JQW has taken creative license with certain body parts, including but not limited to, body and tail length to depict the fish "in action," swimming in freshwater, or to otherwise give the viewer the impression that the fish is "trophy sized" by creatively manipulating the size, shape, and direction of anatomical features in ways which are not possible to fish in nature.

18. JQW's artwork has been painstakingly created, with each minute detail being depicted precisely in the artwork.

19. JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted fish scale with a paintbrush between three and five times.

Complaint - 5

20. JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

21. Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

22. JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

### DEFENDANTS' INFRINGING CONDUCT

23. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

24. Eagle Beverage is a beverage distributor serving a wide territory in Montana, supplying businesses such as restaurants, convenience stores, etc., with a variety of well-known brand-name beverages.

25. In addition to supplying beverages, Eagle Beverage designs and distributes signage for its customers, incorporating the trademarks and product offerings of the brand-name beverage producers.

26. Eagle Beverage designs and creates visually appealing signage to attract customers to its customers' businesses and to promote the sale of the advertised beverages.

27.     In order to promote, advertise, or otherwise market a line of Busch Light beverage cans with fishing-themed designs, Eagle Beverage designed, created, produced, and distributed signage that incorporates the Subject Work (the "Infringing Signage").

28.     The Infringing Signage features an exact, or virtually identical copy of the Subject Work.

[remainder of page intentionally blank]

29. An exemplar photograph of the Infringing Signage is reproduced directly below, followed by a magnified copy, focusing on the relevant portion:





30. A comparison of the Subject Work (left) and the relevant portion of the Infringing Signage (right) is reproduced directly below:

 

31. Directly below is an image wherein the Subject Work is overlayed the relevant portion of the Infringing Signage, set to 50% opacity so that the illustrations are equally visible:



32. The visual comparisons demonstrate an unlawful copying of protectible and highly specific elements of expression, including, but not limited to a)

Complaint - 9

positioning/placement of the fin, tail, body, and other particularized expressions of anatomical features, b) the proportions of the various anatomical features relative to one another, c) the shading and coloring of different areas of the fish, d) the particular shape and size of the fins, tails, and other anatomical features, e) the pose of the fish, f) the highly specific spot pattern across the entire fish, g) the particular shape, size, and placement of the water droplets, and h) the type, placement, size, and coloring of the lure.

33. All of the visual comparisons above, demonstrate that Eagle Beverage copied the Subject Work, in virtually every aspect, and incorporated the Subject Work as part of the Infringing Signage.

34. At a minimum, Eagle Beverage distributed the Infringing Signage to Curtiss, who either affixed and displayed the Infringing Signage to the front of his convenience store or, alternatively, allowed Eagle Beverage to do so.

35. Upon information and belief, Eagle Beverage created and distributed the Infringing Signage, or variations thereof, to other businesses within its distribution territory, based on Eagle Beverage's regular practice of providing promotional signage to its customers, its expansive service area covering numerous businesses similar to Curtiss' convenience store, and its standard marketing efforts to promote the brand-name beverages it supplies.

36. Upon information and belief, Eagle Beverage created and distributed similar or identical signage to that provided to Curtiss, also featuring the Subject Work, to other businesses within Eagle Beverage's service area to promote the same fishing-themed Busch Light product line.

37. Upon information and belief, Eagle Beverage also created and distributed other materials featuring the Subject Work in connection with other promotional campaigns for other brand-name beverages.

38. The allegations herein are made as to all material, products, photographs, advertisements, etc., that Defendants used, created, copied, marketed, displayed, distributed, or sold that incorporate the Subject Work, and the images and comparisons depicted herein are only exemplars.

39. Defendants' individual and joint infringing acts were undertaken to reap the creative and artistic benefit and value of the Subject Work.

40. By failing to obtain Plaintiffs' authorization to use Subject Work, or to compensate Plaintiffs for the use, Defendants avoided payment of license fees and other financial costs associated with obtaining permission to exploit Subject Work, as well as the restrictions that Plaintiffs are entitled to, and would place, on any such exploitation as conditions for Plaintiffs' permission, including the right to deny permission altogether.

41.     JQW distributed the Subject Work, among a small collection of other illustrations, to Anheuser-Busch as part of a grant of a limited license for Anheuser-Busch to use the Subject Work to promote Anheuser-Busch products.

42.     In conjunction with the above license, Anheuser-Busch was permitted to distribute JQW's artwork, including the Subject Work, to Anheuser-Busch's nationwide network of distributors, including Eagle Beverage.

43.     Following the expiration of the license, JQW discovered that certain Anheuser-Busch distributors continued to unlawfully exploit JQW's artwork.

44.     After JQW's discovery, JQW communicated directly with Anheuser-Busch regarding the persistent infringement of his copyrights to his artwork by Anheuser-Busch's distributors. Anheuser-Busch then sent a notice to its nationwide network of distributors to cease exploiting JQW's artwork, including the Subject Work.

45.     Despite receiving notice of JQW's copyrights to the Subject Work, and to cease exploiting the Subject Work, Eagle Beverage nonetheless produced the Infringing Signage.

46.     Defendants willfully misappropriated the Subject Work, and with blatant and reckless disregard for Plaintiffs' rights in and to the Subject Work, by failing to ensure its use of the same was proper, despite the fact that Defendants knew, or should have known, of its infringing nature.

47. As a result of Defendants' infringement of Plaintiffs' copyrights in and to the Subject Work, Plaintiffs have suffered significant damage. Specifically, Plaintiffs have lost royalties and licensing revenue and have suffered dilution and diminishment of the value of the Subject Work.

## COUNT I
### (COPYRIGHT INFRINGEMENT – 17 U.S.C. §101, *et seq.* - Against All Defendants and Each)

48. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

49. JQW is the sole owner of the copyrights to the Subject Work and holds a valid copyright registration in accordance with the United State Copyright Act.

50. The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

51. JQW has complied in all respects with the provisions and requirements of the Copyright Act.

52. Prior to the acts complained of herein, JQW duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

53. JQW has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Work.

54. Upon information and belief, Defendants, and each of them, had access to the Subject Work through (a) viewing Plaintiffs' online portfolio; (b) viewing and/or purchasing licensed exploitations of the Subject Work; and/or (c) viewing and/or

downloading illegally reproduced, imported, and/or distributed copies of the Subject Work by third parties.

55. Defendant Curtiss had access to the Subject Work when he received the Infringing Signage from Eagle Beverage.

56. Access is also established by the striking similarity and/or identicality between the Subject Work and the fish illustration exploited by Defendants, precluding any possibility of independent creation.

57. As detailed *supra*., the rainbow trout within the Infringing Signage is identical or virtually identical to the Subject Work.

58. The rainbow trout illustration within the Infringing Signage copies all or virtually all protectable elements of expression unique to JQW's artistic style, as well as his creative and particular expressions of a rainbow trout fish, as described herein.

59. Eagle Beverage has infringed Plaintiffs' rights by copying the Subject Work and subsequently creating, making and/or developing directly infringing works and/or derivative works featuring the Subject Work.

60. Curtiss has infringed Plaintiffs' rights by displaying the Infringing Signage.

61. Defendants, and each of them, were directly involved in the reproduction, distribution, display, adaptation, and/or creation of a derivative work, using the Subject Work.

62. Due to Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered damages in an amount to be established at trial, including without limitation lost profits, royalties, and a diminution in the value of the misappropriated works.

63. As a result of the acts of infringement complained of herein, Defendants received revenues it would not have otherwise received, added brand value, and indirect sales and profits it would not have otherwise received.

64. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

65. Defendants, and each of them, have committed copyright infringement with actual or constructive knowledge of Plaintiffs' rights such that said acts of copyright infringement were willful, reckless, malicious, and in blatant disregard of Plaintiffs' rights. Such willfulness provides the basis on which Plaintiff seeks additional forms of relief.

66. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

# COUNT II
## (SECONDARY COPYRIGHT INFRINGEMENT – Vicarious Infringement, Against Curtiss, in the Alternative)

67. Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

68. To the extent that Curtiss was not directly responsible for displaying the Infringing Signage, Curtiss is vicariously liable for the direct infringement alleged herein because Curtiss had the right and ability to supervise the creation and display of the Infringing Signage and because they had a direct financial interest in the creation and display of the Infringing Signage.

69. Curtiss has full control and final decision-making authority over any signage, marketing, advertising, or promotional material affixed to the front of his store, which includes the responsibility to ensure that all signage, including third-party marketing, complies with applicable legal and intellectual property standards.

70. Curtiss maintains a right and practical ability to stop or limit the display of the Infringing Signage, namely that Curtiss; (a) has the ability to review, approve, decline, or otherwise supervise the creation of marketing, advertising, and promotional material created for him, including but not limited to the Infringing Signage; (b) controls what signage, advertising, etc., is displayed on the front of his store; and (c) has the practical ability to remove marketing, advertising, and

promotional material, including the Infringing Signage that he finds objectionable, for any reason.

71. Despite having full control and final decision-making authority over any signage, marketing, advertising, or promotional materials affixed to the front of his store, Curtiss did not ensure that Eagle Beverage had the legal right to incorporate the Subject Work into the Infringing Signage, and that the Infringing Signage can be affixed to the front of Curtiss' store.

72. Before the Infringing Signage was affixed to his storefront, Curtiss failed to exercise his right and ability to stop or limit the display of the Infringing Signage.

73. Upon information and belief, and upon notice of Plaintiffs' copyrights, Curtiss himself removed the Infringing Signage, or in the alternative, directed another person to remove the Infringing Signage.

74. Curtiss had an obvious and direct financial interest in the display of the Infringing Signage as it (a) was used to promote, market, and advertise the availability of Busch Light products for sale in Curtiss' store, including a specialty/limited-edition line of beverages, and (b) served as a "draw" for consumers to purchase Busch Light beverages from Curtiss.

75. The purpose of the Infringing Signage was to capture consumer attention and drive customer traffic into the store to purchase Busch Light branded beverages, and,

incidentally, other products alongside their beverage purchases, thereby increasing overall revenue.

76. Upon information and belief, Curtiss received financial incentives, such as discounts or promotional allowances from Eagle Beverage to display the Infringing Signage and/or to promote Busch Light products within Curtiss' storefront.

77. Due to Curtiss' acts of copyright infringement as alleged herein, Curtiss has obtained direct and indirect profits he would not otherwise have realized but for their infringement of the Subject Work. As such, Plaintiffs are entitled to disgorgement of Curtiss' profits directly and indirectly attributable to the infringement of Plaintiffs' rights in the Subject Work, in an amount to be established at trial.

78. Upon information and belief, Curtiss has committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Curtiss to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00). Within the time permitted by law, Plaintiffs will make their election between actual damages and statutory damages.

79. Plaintiffs claim all damages and remedies available under 17 U.S.C. §§504 and 505.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests judgment against Defendants, and each of them, as follows:

A. that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501(a);

B. that Defendants and their respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to Subject Work;

C. impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Subject Work, pursuant to 17 U.S.C. §503(b);

D. that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages 17 U.S.C. § 504(c);

E. that if Plaintiffs elect statutory damages, the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs'

federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2), or in the alternative, under §504(c)(1);

F. that Plaintiffs be awarded their attorneys' fees as available under 17 U.S.C. §505 or other applicable statute;

G. that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H. that Plaintiffs be awarded the costs of this action; and

I. that Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date: November 13, 2024

By: _/s/ Michael G. Black_____
Michael G. Black, Esq.
Bar No. (3508)
Black Law Office
7 West Sixth Avenue, Suite 514
Post Office Box 1311
Helena, Montana 59624-1311
blacklaw@blackfoot.net

Dmitry Lapin, Esq. (*pro hac vice* pending)
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570

*Attorneys for Plaintiffs*